IN RE INTEREST OF C.C., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. T.C., APPELLANT.
411 N.W.2d 51

Filed August 14, 1987.   No. 86-885.

Christine P. Costantakos, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

T.C., the biological father of C.C., appeals from an order of the separate juvenile court of Douglas County terminating his parental rights pursuant to Neb. Rev. Stat. § 43-292(6) (Reissue 1984) for failure to correct conditions leading to the adjudication that C.C. is a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1986).

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. See, *In re Interest of K.L.N. and M.J.N.*, 225 Neb. 595, 407 N.W.2d 189 (1987); *In re Interest of J.W.*, 224 Neb. 897, 402 N.W.2d 671 (1987); *In re Interest of M.L.B.*, 221 Neb. 396, 377 N.W.2d 521 (1985). In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Cum. Supp. 1982 & Reissue 1984), termination of parental rights is permissible when the basis for such termination is proved by clear and convincing evidence. See, *In re Interest of K.L.N. and M.J.N., supra; In re Interest of J.W., supra.* A juvenile's best interests are one of the primary considerations in determining whether parental rights should be terminated as authorized by the

Nebraska Juvenile Code. See, *In re Interest of K.L.N. and M.J.N., supra; In re Interest of J.W., supra.*
*In re Interest of T.C., ante* p. 116, 117-18, 409 N.W.2d 607, 609 (1987).

On March 13, 1984, the State filed a petition and alleged that C.C., who was born on June 13, 1983, was a juvenile within the meaning of § 43-247(3)(a) (Cum. Supp. 1982) because C.C. lacked proper parental care by reason of the faults or habits of her parents. The petition contained the following allegations:

A. On February 28, 1984, said child was admitted to the hospital suffering from a bilateral subdural hematoma, which required subdural taps; said injuries occurred while said child was in the custody of [C.C.'s parents]; said parents offered several inconsistent reasons for the injuries suffered by said child.

B. [C.C.'s parents] have failed to make said child available for necessary cleft palate surgery and other medical needs of said child after having been advised by medical personnel of the urgency for said treatment and care.

C. [T.C.] has admitted to violent shaking of said child, on several occasions; [C.C.'s mother] has failed to protect said child during these episodes and has continued to leave said child in the sole custody of [T.C.] being fully cognizant of his violent nature.

D. [T.C.] has failed to seek or make himself available to the mental health care prescribed and/or recommended for him; [T.C.] has admitted to a violent temper and his need for therapy or counseling.

E. [T.C.] has, on several occasions, physically assaulted [C.C.'s mother] in the presence of said child; [C.C.'s mother] has expressed a fear of [T.C.] because of his temper.

At the adjudication hearing, held on March 22, 1984, C.C.'s parents appeared before the court with their lawyer. Also, the guardian ad litem for C.C. appeared at the adjudication hearing. C.C.'s parents entered their pleas of "no contest" to the petition. The juvenile court found that C.C. was a juvenile within the meaning of § 43-247(3)(a) and continued the

proceedings until a dispositional hearing. On May 30, 1984, C.C.'s parents appeared before the court with their attorney for the dispositional hearing. The guardian ad litem for C.C. and a representative of the Nebraska Department of Social Services also appeared for the dispositional hearing. Evidence presented at the dispositional hearing disclosed that the father, T.C., had many problems, such as impulsivity, drug abuse, coping with stress, and urges of violence. T.C. was described as a person who is aggressive, violent, and manipulative and as an individual in desperate need of professional psychological help. A psychological evaluation indicates that T.C. has an antisocial personality, that is, he is prone to impulsive, explosive acts and has a history of drug dependence. The father has had several residences apart from the child and her mother. Psychological evaluation also revealed that C.C.'s mother is functioning at the borderline retarded area of intelligence. Evidence further disclosed that C.C. has a number of conditions which require special attention, including Waardenburg's syndrome, a musculoskeletal abnormality; an orthopedic and nervous disorder; a cleft palate, which required surgery; conducive hearing loss requiring a hearing aid; and a heart murmur and breathing condition, which required C.C. to be placed on an apnea monitor. At 9 months of age, C.C. suffered a bilateral subdural hematoma as a result of trauma to C.C.'s head. Prior to C.C.'s receiving that head injury, C.C. had quit breathing, to which T.C. responded by shaking her vigorously instead of administering CPR as he had been instructed. T.C. also disclosed another incident of head trauma, occurring prior to the preceding incident, when he placed C.C. on a table, left her unattended, and she fell on the floor, severely bruising her head.

At the conclusion of the dispositional hearing, the juvenile court, in addition to certain rehabilitative measures for the parents, ordered that C.C.'s parents take the Infant Stimulation Program at the Meyer Children's Rehabilitation Institute and receive parenting instruction. The court then ordered that temporary custody of C.C. would remain with the Nebraska Department of Social Services until C.C.'s parents complied with the plan to correct the conditions leading to the finding

that C.C. was a juvenile within the meaning of § 43-247(3)(a). Subject to supervision and monitoring by the Meyer Children's Rehabilitation Institute, C.C.'s parents were granted the reasonable right of visitation of C.C.

Following the dispositional hearing, review hearings were held in September of 1984 and March of 1985. During this period, T.C. had not been in compliance with the court's order regarding participation in the Infant Stimulation Program and had missed a number of his scheduled appointments. Although T.C. had complied with the order to be evaluated by Nebraska Psychiatric Institute, following his diagnosis disclosing marijuana and other drug abuse, T.C. refused to participate in any followup therapy, but continued to use marijuana. In March of 1985 T.C. had yet to maintain independent and separate housing and had no "workable income" at that time. The juvenile court then reaffirmed its order regarding T.C.'s compliance with the rehabilitation plan and set the matter for subsequent review hearings. Two hearings in 1985 and one in May of 1986 also disclosed that T.C. had yet to comply with the court-ordered rehabilitation plan.

Based on § 43-292(6), a motion to terminate parental rights was filed on June 4, 1986, alleging that T.C. had failed to comply with the plan for rehabilitation ordered by the court on May 30, 1984, that is, T.C. had visited C.C. on only 30 percent of the scheduled visits, had failed to maintain involvement in the Infant Stimulation Program through the Meyer Children's Rehabilitation Institute, had not pursued the recommendations of the Nebraska Psychiatric Institute, and had failed to maintain independent and separate housing and adequate income.

A hearing on the motion to terminate parental rights was held on August 6, 1986. Throughout the 2-year period of time during which this matter was pending before the juvenile court, T.C. was repeatedly admonished regarding compliance with the provisions of the rehabilitation plan ordered by the court. However, as shown by evidence at the August 6 hearing, T.C. had not completed participation in the Infant Stimulation Program. Jessie Rasmussen, a parent-infant educator for Meyer Children's Rehabilitation Institute, testified that,

beginning in September of 1984, T.C. was scheduled for bimonthly 1-hour sessions of training and instruction in view of C.C.'s disabilities. Rasmussen explained the importance of attendance at the sessions so that T.C. could obtain the necessary instruction to assist C.C. with physical and speech therapy, which was necessary because of C.C.'s condition. However, T.C. attended only 4 of the 13 scheduled sessions from September of 1984 through February of 1985 and discontinued participation in the program. Since October of 1984, when T.C. separated from C.C.'s mother, T.C. had the opportunity to be with C.C. during 80 scheduled visits. Of the 80 scheduled visits, T.C. visited C.C. on only 29 occasions, citing massive depression, drug withdrawal, and transportation problems as excuses. Further, throughout the entire proceedings, T.C. failed to maintain independent housing, and his employment history indicated that he was sporadically employed and rarely held a job for a period of time greater than 1 month.

Although T.C., as ordered by the court, had started individual and group therapy in view of T.C.'s psychiatric problems and drug dependency, he was terminated from two programs for lack of attendance and claimed he was unable to pay for therapy at the Nebraska Psychiatric Institute. Carol Citta, an employee of the Nebraska Department of Social Services, testified that she explained to T.C. how he could apply for free psychiatric treatment and care at the Nebraska Psychiatric Institute, but that T.C. failed to follow through with the application process, as he felt he really did not need psychiatric attention. Further, Citta testified that transportation was made available to T.C., and T.C. acknowledged that he had other means of getting to and from his scheduled appointments. The court found that the allegations that T.C. had failed to comply with the court's rehabilitation plan were true and that, in the best interests of C.C., the parental rights of T.C. should be terminated.

Following the termination order, T.C. filed a motion for new trial, alleging that newly discovered evidence, namely, that T.C. secured a job and separate housing subsequent to the hearing for termination of parental rights, required that the court grant

his motion. The motion was denied, and T.C. maintains on appeal that the juvenile court was in error in finding that T.C.'s lack of compliance with the court-ordered rehabilitation plan was established by clear and convincing evidence. T.C. further maintains the juvenile court erred in overruling his motion for new trial.

As we recently stated in *In re Interest of T.C., ante* p. 116, 121-22, 409 N.W.2d 607, 611 (1987):

> As part of its powers, the juvenile court, in its discretion, may prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. See *In re Interest of Brungardt*, 211 Neb. 519, 319 N.W.2d 109 (1982). Cf. § 43-292 (termination of parental rights; failure to correct conditions leading to adjudication).

> As expressed in *In re Interest of W.*, 217 Neb. 325, 330, 348 N.W.2d 861, 865 (1984): "The mother has failed to rehabilitate herself, notwithstanding the [court's] order and programs directed to rehabilitation. When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child require a final disposition be made without delay."

The program for T.C.'s rehabilitation was designed for appropriate parental care for C.C. and her basic needs. In view of T.C.'s personality problems, a plan providing for therapy was reasonable under the circumstances. The needs of C.C. require both emotional and some financial stability and support, as well as parental desire to care for and assist C.C., a disabled child. T.C., by his actions, has shown no indication that he will provide such support. We find clear and convincing evidence that T.C. failed to comply with the rehabilitative program ordered by the juvenile court and that T.C. has not corrected the conditions leading to the adjudication that C.C. was a juvenile under § 43-247(3)(a). Therefore, termination of parental rights is proper under the circumstances.

Finally, regarding T.C.'s motion for a new trial, we note that "the granting or refusal of such a motion for a new trial is left to the sound discretion of the trial court, and in the absence of an

abuse of that discretion the determination will not be disturbed." *State v. Donnelson*, 225 Neb. 41, 53, 402 N.W.2d 302, 310 (1987). " 'Evidence of facts occurring after a trial ordinarily cannot be made the basis for a motion for new trial on the ground of newly discovered evidence.' " *Martinez v. Peterson*, 212 Neb. 168, 173, 322 N.W.2d 386, 389 (1982). See Neb. Rev. Stat. § 25-1142 (Reissue 1985). We find no abuse of discretion by the juvenile court in denying T.C.'s motion for a new trial. Accordingly, after our de novo review of the record, we affirm the juvenile court's order terminating the parental rights of T.C.

AFFIRMED.