IN RE INTEREST OF P.J.M., R.E.M., AND S.A.M., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. R.M., APPELLANT, AND L.M.,
APPELLEE.

415 N.W.2d 124

Filed November 6, 1987.   Nos. 86-858, 86-859, 86-860.

C.E. Danley, for appellant.

Jerry L. Shelton, Deputy Gage County Attorney, and Dennis A. Winkle, guardian ad litem, for appellee State.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.
On May 8, 1986, the Gage County Court, sitting as a juvenile court, entered an order terminating the parental rights of R.M. and L.M. as to their children P.J.M., R.E.M., and S.A.M. Both parents appealed to the district court for Gage County. The district court affirmed the termination order. The father, R.M., appealed to this court, asserting only that the decision was not founded upon clear and convincing evidence. We affirm.

On February 2, 1982, the State filed petitions alleging that P.J.M., R.E.M., and S.A.M. were in a situation which was injurious to the health of such children by virtue of unsanitary living conditions. See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1984). The adjudication hearing was had on the matter on February 23, 1982. The parents admitted that they had no place to live at that time and consented to the children's being placed in temporary custody with the Gage County department of public welfare.

On April 13, 1982, the court entered an order of temporary

disposition under the following terms and conditions:

(1) That the parents attend counseling at Blue Valley Mental Health Center, Beatrice, Nebraska. Said counseling to include but not necessarily be limited to the following topics:

a. Parenting skills

b. Discipline and guidance of children

c. Coping with stress

d. Marital strife

e. Finances

f. Adult supervision of children

(2) That [R.M.] seek and maintain suitable employment and make no change in employment without permission of the Gage County Division of Public Welfare.

(3) That the parents obtain adequate housing in cooperation with the Beatrice Housing Authority and maintain suitable housekeeping standards as approved by the Gage County Division of Public Welfare.

(4) That the parents work with the Gage County Home Extension Aide in improving nutrition and meal planning and food budgeting.

(5) That the parents maintain contact with the Gage County Division of Public Welfare and agree to visitation from personnel associated with said agency.

This order was continued several times, and on November 29, 1983, the order was continued and modified as follows:

(6) account for all income and expenses to the State Department of social services.

(7) [R.M.] shall enroll and regularly attend the Nebraska Division of Rehabulation [sic] Services Program (Voc Rehab) and succssfully [sic] complete the same.

On November 26, 1985, the State of Nebraska and the guardian ad litem for the children filed motions to terminate the parental rights of both parents. A hearing was held on these motions, after which the judge entered the termination order. The court made specific findings as to each of the seven above-mentioned directions and concluded that, pursuant to Neb. Rev. Stat. § 43-292(6) (Reissue 1984), reasonable efforts,

under the direction of the court, had failed to correct the conditions which originally necessitated the order. The court further found that it was in the best interests of the children that a final disposition terminating parental rights be made, since the parents had been unable, within a reasonable time, to rehabilitate themselves.

Our review of an order terminating parental rights is de novo on the record. *In re Interest of C.C., ante* p. 263, 411 N.W.2d 51 (1987). The order must be supported by clear and convincing evidence, and the court's primary consideration must be focused on the best interests of the child or children involved. *Id.*

The Nebraska Department of Social Services became involved with this situation in February of 1981 following a referral from the Beatrice Police Department which expressed concern about filthy home conditions and nutrition of the children in the home. During a visit to the home, a Child Protective Services worker with the department observed that the overall home conditions were very bad: the floors were dirty, so dirty that her shoes stuck to the floor in the kitchen; food was crusted on top of the stove and running down the side of the stove; and there was very little food in the refrigerator. The Child Protective Services worker continued to work with the mother and father for nearly a year, but the unsanitary conditions persisted. In January of 1982 a report was forwarded to the Gage County attorney's office, which led to the initial adjudication placing the children in foster care. When the children were placed into foster care in February, they were quite dirty and had head lice.

During the ensuing 4 years, the parents moved a number of times to different residences in the city of Beatrice. After each move, housekeeping standards would improve for a short period under the direction of social services workers, but, after a time, efforts to maintain sanitary conditions would fail.

Two children were born to the parents following the adjudication of P.J.M., R.E.M., and S.A.M. The parents were divorced in March of 1984, but were living together at the time of the termination hearing.

In April of 1985 the Nebraska Department of Social Services

contracted with a private agency, in a further attempt to reunify the family. A worker for this agency testified that from April through July she visited the mother two times a week and sometimes even more to help develop housekeeping, nutrition, and parenting skills. Despite these efforts, no appreciable progress was made with respect to housekeeping. The worker also testified as to the mother's inability to provide proper hygiene and nutrition care for her child then in the home. During her visits, the worker observed that the father never did anything to help with the maintenance of the home or care of the child.

From November of 1985 until the termination hearing the Department of Social Services again provided intensive counseling to the mother in the areas of nutrition, housekeeping, and child care practices. Once again these efforts proved fruitless. This worker testified that when the father was in the home, the mother was less willing to cooperate with her.

Despite repeated efforts on the part of social workers and repeated admonishments from the court, the parents were unwilling to attend counseling appointments at Blue Valley Mental Health on a regular basis. The mother testified that she "just got tired of [going]" to the counseling sessions, and added that she did not feel the counseling resulted in any progress. The father agreed with this testimony. Both parents testified that they were aware that the counseling was ordered by the court and attendance was a necessary step in getting their children back. There was also expert testimony from a psychologist that both parents had the intellectual capacity to understand and appreciate the court order.

At the time of the termination hearing the mother was unemployed, caring for the two children born since the court placed the first three children in foster care. The father has had occasional odd jobs, but has had no regular full-time employment since the adjudication. He also failed to complete the vocational rehabilitation program as ordered.

The father totally disregarded the court's order that he account for his income and expenses to the state Department of Social Services. His testimony regarding this issue reflects his

belligerent attitude with respect to the entire matter:

Q- Okay. Now, at a later time the Court ordered you to report your earnings and make an accounting of your earnings to the Department of Social Services, Mrs. Church. Is that correct?

A- Right.

Q- Mrs. Church testified that you failed to do that. Is that correct?

A- That's true.

Q- What is the reason for that?

A- Because the reason is I don't feel right that I have to show what I spend my money on and nobody else do, either.

Q- You don't feel that showing an ability to budget and control your money would be important to show to the Court — in showing your fitness to have custody of your children back?

A- I know what I spend my money on and I think it's my business what I spend my money on.

Q- Okay. So in other words, you don't think the Court or the department has really any business sticking their nose into your finances. Is that right?

A- Right.

It is evident from all of this that the father did little, if anything, to comply with the court order, and yet, it is he and he alone who is now appealing the termination order. The mother, who at least made some effort to rectify the situation, admitted at the termination hearing that she was then unable to care for the three children, given her present home situation with the other two children.

The three children have been in the same foster care home since the adjudication. When they were initially placed in foster care, they were behind in their developmental skills. Since then they have done quite well, but the youngest child, R.E.M., has had a severe speech problem which has required special attention on the part of the foster parents.

The juvenile court judge accurately summarized the situation:

[A]fter four years of court-directed intervention including

assistance from Social Services, counseling by mental health professionals, aid from the County Extension Service, and intensive in-house training by two separate private agencies, there is no realistic hope for returning the children to their parents within the foreseeable future. Put simply, the parents wish to maintain contact with their children, but are content to have them reared by the state.

Given the situation, the juvenile court's plan for parental rehabilitation was reasonable. The plan attempted to provide necessary instruction on housekeeping, nutrition, and care for the children, and also to provide at least the minimal amount of financial and emotional stability required to sustain a family unit.

We find clear and convincing evidence that R.M. failed to comply with this program as ordered and that the conditions leading to the adjudication have remained uncorrected. We have consistently held that when parents are unable or unwilling to rehabilitate themselves within a reasonable time, the best interests of the child or children require that parental rights be terminated without delay. *In re Interest of C.C., ante* p. 263, 411 N.W.2d 51 (1987); *In re Interest of W.,* 217 Neb. 325, 348 N.W.2d 861 (1984). The 4 years that have expired since the original adjudication have been more than enough time for the parents to attempt rehabilitation. It is apparent that they have been unable to do so, and it is now in the best interests of the children for a final disposition of this case. We therefore affirm the district court's decision affirming the juvenile court's order terminating the parental rights of R.M. as to his children P.J.M., R.E.M., and S.A.M.

AFFIRMED.