HELEN McCOY, APPELLANT, V. KAREN STEFFEN AND BANK OF
HARTINGTON, A CORPORATION, APPELLEES.
416 N.W.2d 16

Filed December 4, 1987.   No. 86-167.

Vince Kirby, for appellant.

John Thomas, for appellee Bank of Hartington.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

BOSLAUGH, J.

This action was commenced by the plaintiff, Helen McCoy, to recover $12,071.89 alleged to be due her under a farm lease on land owned by the plaintiff in Knox County, Nebraska. The lease provided for cash rent to be paid by the defendant lessees, Fred Steffen and Karen Steffen, and that unpaid rent should be a lien upon crops raised on the premises. The petition further alleged that the defendant Bank of Hartington claimed an interest in the crops grown and stored on the premises.

Because the defendants Steffen had advertised a farm sale, the plaintiff obtained an order of attachment under which 5,600 bushels of corn stored on the premises were attached.

The Bank of Hartington filed an answer, alleging that it had a perfected security interest in the corn attached by the plaintiff by reason of a prior security agreement executed by the defendant Fred Steffen securing a promissory note on which $150,029.88 was due the bank. The answer prayed for an order directing the sheriff to deliver the attached corn to the bank.

Pursuant to a stipulation between the plaintiff and the bank, the corn was sold and the proceeds paid in to the clerk of the court.

On May 20, 1985, the bank filed an amended answer and counterclaim, alleging loans of new money on four dates in 1984 and claiming damages from the plaintiff for wrongful

attachment.

On December 10, 1985, the trial court found that the lien of the bank on the corn was prior to the plaintiff's lien and that the bank was entitled to recover damages from the plaintiff in the amount of $411.83 and costs in the amount of $1,776.58, including attorney fees in the amount of $880. The plaintiff has appealed.

The controversy in this court is between the plaintiff and the bank. The plaintiff contends that the trial court erred in finding that the lien of the bank was prior to that of the plaintiff and in awarding damages and attorney fees to the bank on its counterclaim.

In *Todsen v. Runge*, 211 Neb. 226, 318 N.W.2d 88 (1982), we held that there must be compliance with the filing requirements of Neb. U.C.C. art. 9 (Reissue 1980) in order to perfect a security interest in a contractual landlord's lien. In this case the plaintiff did not file any financing statement.

Under Neb. U.C.C. § 9-312(5) (Cum. Supp. 1984), conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier. Since the bank's financing statement had been filed earlier, its lien was prior to that of the plaintiff.

The plaintiff further contends that the trial court erred in finding that § 9-312(2) did not give the plaintiff priority. Section 9-312(2) provides:

> A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

Section 9-312(2) refers to production loans for current crops. Comment 2 to § 9-312(2) (Reissue 1980). The plaintiff in this

case never perfected a security interest in "growing crops."

The plaintiff did not perfect a security interest in the corn, if at all, until after the corn had been harvested and was no longer a "growing crop."

To meet the requirements of § 9-312(2), the bank's earlier perfected security interest must have secured obligations due more than 6 months before the crops became growing crops, by planting or otherwise. This requirement has been interpreted to give priority "only over obligations more than six months *overdue* at the time the crops become growing crops." (Emphasis supplied.) J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 25-6 at 1053 (2d ed. 1980); *In re Connor*, 733 F.2d 523 (8th Cir. 1984). In the *Connor* case the court held that a loan is not overdue within the meaning of § 9-312(2) if installment payments are due within 6 months before the crops become growing crops. See, also, *United States v. Minster Farmers Coop. Ex., Inc.*, 430 F. Supp. 566 (N.D. Ohio 1977).

The bank, by renewal of the notes signed by Fred Steffen, the last renewal being on December 20, 1984, gave new value and prevented the original loan from being considered "overdue." In *First Nat. Bank in Pierre, S.D. v. Feeney*, 393 N.W.2d 458 (S.D. 1986), in interpreting an identical statute, the court held that the renewal of a previous note constitutes "new value" and was sufficient to support a security agreement. The giving of new value prevented the loan from being considered overdue.

The assignment of error regarding damages and attorney fees was not discussed in the plaintiff's brief. Consideration of an issue in this court is limited to errors assigned and discussed. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986); *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986).

The judgment is affirmed.

AFFIRMED.