IN RE INTEREST OF J.A. AND T.A., CHILDREN UNDER THE AGE OF 18 YEARS.
STATE OF NEBRASKA, APPELLEE, V. K.A., APPELLANT.
426 N.W.2d 277

Filed July 22, 1988.   No. 87-528.

P. Stephen Potter for appellant.

James M. O'Rourke, Dawson County Attorney, for appellee.

W. Wesley Lubberstedt, guardian ad litem.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

HASTINGS, C.J.

The mother, K.A., appeals from the termination of her parental rights in the county court for Dawson County.

In an appeal from a judgment terminating parental rights, the Nebraska Supreme Court tries the factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the trial court; however, where the evidence is in conflict, the Supreme Court considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of M.R., J.R., and N.R.*, 228 Neb. 47, 420 N.W.2d 924 (1988).

The county attorney filed a petition on July 23, 1984, alleging that T.A. and her half-brother J.A. fell within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982); that is, that they were minors who lacked proper parental care by reason of the fault or habits of their parents, or whose parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of the children, or who were in a situation injurious to the health or morals of the children. Upon a hearing, the children were placed in the custody of the Department of Social Services (DSS).

The children first came to the attention of the State in July 1984, when it was learned that T. (date of birth February 20, 1981) was being sexually abused by her mother's boyfriend (J.'s father) and her cousin. T. reported that her mother's boyfriend sexually abused her in her mother's presence. She also reported one instance of sexual abuse by the appellant herself. In addition, there was evidence that both T. and J. (date of birth August 14, 1983) had been physically abused by their mother. T. had welts on her body when first placed in foster care, and told

her foster mother that her mother pulls her hair (T. refused to wear ponytails for this reason), twists her nose hard, twists her arm, kicks her, and bends her fingers back "until it really hurt." There was also evidence of extreme verbal abuse.

After visits to the appellant's home, the children often returned upset. They reported being hit and called names while at the appellant's home. T., who stated to her foster parent that she had been beaten with a board, also told her foster parent that she did not want to visit the appellant again because she had been hit and called "stupid." On one occasion, the boyfriend knocked J. out and told T. not to tell; in another instance, the appellant and her boyfriend gave J. beer to put him to sleep.

The condition of the home was filthy. The DSS employees reported finding standing water on the kitchen floor, trash on the unswept floor, a dirty blanket on the bed, no pillowcases on very dirty pillows, and one bed with no sheets and the springs exposed.

The matter was set for adjudication on September 25, 1984. At that time, the appellant admitted that she had not maintained the home in a proper condition, and the court found that the children were as defined in § 43-247(3)(a).

At the dispositional hearing on October 23, 1984, the court placed the children in foster care and requested DSS to draw up a plan for reunification.

A review hearing was held on April 16, 1985. An exhibit received at this hearing indicated that the appellant had, in the past 3 months, attended only four of her seven scheduled appointments with her therapist. The therapist stated that the appellant was "extremely resistant to therapy" and that her defensive, hostile, and explosive behavior was "extremely unhealthy for children to be around." The court continued the placement of the children with DSS. A rehabilitation plan was implemented.

The matter once again came on for review on October 16, 1985. The court continued the matter and ordered the appellant to cooperate fully with DSS for 1 month.

At the review hearing on November 20, 1985, the DSS worker testified that since the last hearing the appellant had

made slow progress on her homemaking skills, did not find employment, and did not complete her parenting classes. Nevertheless, the court allowed the appellant to have temporary physical custody of the children, with strict supervision by DSS.

On March 12, 1986, the court found that the appellant had made some progress, and continued custody of the children with the mother.

On September 10, 1986, the county attorney moved to terminate the appellant's parental rights under Neb. Rev. Stat. §§ 43-291 and 43-292(1), (2), (3), (4), and (6) (Reissue 1984). The motion alleged, inter alia, that reasonable efforts under the direction of the court had failed to correct the conditions leading to the determination that the children were as described in § 43-247(3)(a) (Reissue 1984). The reports of the DSS worker from the time of the last hearing in March until the motion was filed showed that the appellant had made no progress toward rehabilitation; although "[i]n February, many positive things were occurring in the family . . . [n]ow almost everything is negative." The reports reveal that the appellant conducted "pot parties" and often spent her income on marijuana; the house continued to be filthy; the new boyfriend lived with the appellant despite the court's order against this (the appellant stated that she was aware that this was contrary to her service plan but that it was a "chance she had to take"); and although the appellant did find employment at Dottie's Diner, she was fired in less than 2 weeks for repeatedly failing to show up for work. The appellant attended only a little over half of her therapy sessions, quit vocational counseling with one counselor and did not keep any appointments with her other counselor, quit her volunteer work without notice, and made no progress toward obtaining her GED. She continued to use inappropriate discipline, and on one occasion left the children with a babysitter until 3 a.m., when she and her boyfriend went to the races.

T. developed a strep infection in July 1986; J. had a rash around his groin; in August 1986, T. contracted a staph infection; and in September 1986, T. had impetigo and both children had scabies. The doctor noted that both children were

dirty and that filth and dirt kept the infection going. Although T.'s hands were oozing and she had scar-producing sores on her back, the appellant did not take T. to the doctor; the DSS worker finally took her. T. also had several allergies which were agitated by smoke; nevertheless, the appellant and her boyfriend ignored the court's order not to smoke in T.'s presence. The appellant also refused to wait, as instructed, to see if T. would have a reaction to her allergy shots. The appellant's attitude toward children was also revealed by statements that she made over these months. In April, she stated that she did not care if she lost her children again. In June, she remarked that with one more child, she could collect more money and afford a nicer place to live.

There was no direct evidence of continued sexual abuse, but sexual "acting out" by the children increased. On more than one occasions, J. would invite T. to watch as he masturbated. There was also evidence that J. and T. engaged in sexual activity with one another and with two neighbor girls. During the time she spent back in the appellant's home, T. regressed to the point where her speech became babyish, and she was put into developmental kindergarten.

Upon hearing the evidence, the court returned the children to foster care and set the matter for a termination hearing.

The hearing on the termination motion was held on February 11, 1987. The parties presented evidence, and the appellant was given an opportunity to review certain documented evidence until February 18, 1987. The hearing continued on February 18, at which time the court continued the motion for an additional 90 days. Furthermore, the court imposed additional conditions on the appellant's rehabilitation plan.

In the DSS review report dated December 15, 1986, it was noted, "[The appellant] was told [at the September 10, 1986, hearing] that she would have about 2 months to demonstrate an improvement in her parenting ability; there has been no progress." The report also noted that T. had "regressed appreciably" when with the appellant and that both children had delayed speech development. A report by a mental health professional additionally revealed that T. had a "disturbed and deteriorating" psychiatric condition, and had such anxiety and

hostility, especially toward sexual stimuli, that her thought processes were interrupted. The report stated that T. met her need for nurturance and made up for the lack of family warmth by engaging in sexual activity with her brother. The foster parents also reported several incidents of inappropriate sexual activity by the children.

The appellant did complete an inpatient drug and alcohol abuse program, although her prognosis was poor as she had failed to adequately follow through with aftercare. She attended three followup sessions, but canceled or simply did not show up for six others.

The final hearing was on May 13, 1987. Evidence was presented by both sides. The evidence showed the appellant's continued pattern of failing to follow the rehabilitation plan, with the only real achievement being her completion of the inpatient drug and alcohol abuse program. The court found that, despite the appellant's progress in confronting her alcohol problem, "We are no closer today to your being able to provide for those children [than] we were 18 months ago, or 24 months ago when this thing originally started." Upon determining the best interests of the children, the court terminated the appellant's parental rights pursuant to § 43-292(2).

The following were assigned as error: (1) The court erred in terminating the appellant's parental rights under § 43-292(2); (2) the court erred in failing to address whether or not the appellant had complied with the court-ordered plan; and (3) the court erred in not finding that the appellant had complied with the plan.

In its argument, the appellant's brief advances arguments based on due process, the admission of ex parte evidence, and the Nebraska and U.S. Constitutions. These claims were not assigned as error and thus cannot be considered on appeal. *McCoy v. Steffen*, 227 Neb. 72, 416 N.W.2d 16 (1987).

The remainder of the appellant's argument loosely concerns the assigned errors. The appellant basically argues that the court terminated her parental rights under the wrong subsection of § 43-292: since the petition was initially brought pursuant to § 43-247(3)(a) (Cum. Supp. 1982), and since § 43-292(6) provides for termination when, "[f]ollowing a

determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination," then the court should have relied on § 43-292(6) as the applicable provision for termination. Instead, the court stated that the appellant's parental rights were terminated under § 43-292(2). ("The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection.") The appellant interprets § 43-292(6) as *requiring* the court to proceed under that subsection (as opposed to (2) or any others) whenever a determination has been made under § 43-247. By not proceeding under subsection (6), the appellant argues, the court completely failed to take into account the plan with which the appellant had been ordered to comply.

The argument is without merit. Section 43-292 states that the court may terminate parental rights when it appears that any one of the six conditions has been met. Failure to correct the conditions leading to the determination that the children fall under § 43-247 is only one possible reason for termination; the court is free to terminate parental rights under any of the other subsections if the evidence supports such a decision. The appellant has misinterpreted the language of § 43-292(6).

The appellant argues that the court completely failed to consider whether she had complied with the court-ordered rehabilitation plan when making its final determination of termination. Although the court did state that it was terminating the appellant's parental rights under § 43-292(2) ("The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection"), the court did not "completely disregard" the rehabilitation plan, as the appellant alleges. To the contrary, the record shows that the court was well aware of the plan throughout the many months that the appellant was under the court's jurisdiction. Moreover, although it did not specifically mention "the plan" at the determination, it is clear that the court was considering the appellant's failure to rehabilitate herself when it made the

decision to terminate. The court stated that it agreed with the guardian ad litem, who had specifically pointed to the appellant's noncompliance with the plan, and stated that "[w]e are no closer today to your being able to provide for those children [than] we were 18 months ago, or 24 months ago when this thing originally started." Clearly, the court took the appellant's performance into account when reaching its decision.

The appeal is without merit. The appellant was clearly unable to properly care for her children, and this fact did not change in the 2 years that the appellant was given to improve herself. The court's decision to terminate the appellant's parental rights is affirmed.

AFFIRMED.