IN RE INTEREST OF S.B.E. AND D.E., CHILDREN UNDER 18 YEARS
OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, V. DANDY
E., APPELLANT, AND T.E., APPELLEE AND CROSS-APPELLANT.
IN RE INTEREST OF S.S.W. AND M.D.W., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. T.E., APPELLANT.

484 N.W.2d 97

Filed May 22, 1992.    Nos. S-91-233, S-91-234, S-91-374, S-91-375.

Greg C. Harris for appellant D.E.

Stephen G. Lowe for appellant T.E.

Thomas S. Stewart, Deputy Buffalo County Attorney, for appellee State.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.
On December 15, 1987, the State filed separate petitions for the adjudications of S.S.W., born April 25, 1980; M.D.W.,

born May 1, 1982; S.B.E., born October 2, 1983; and D.E., born December 26, 1984, as neglected children.

On April 8, 1988, the mother of the four minor children, S.S.W., M.D.W., S.B.E., and D.E., and Dandy E., the father of S.B.E. and D.E., appeared in the county court for Buffalo County, Nebraska, to answer to juvenile complaints alleging that the children were juveniles as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988). That section provides for · ·

[a]ny juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such juvenile. ·

The specific allegations of the petitions are not contained in the transcript, but the court ultimately found that the mother and Dandy had (1) engaged in improper disciplining of the children through excessive physical actions, including excessive use of a belt and cigarette lighter burns appearing on the children; (2) neglected to provide proper and adequate supervision, nurturing, or bonding of the children; (3) engaged in psychosocial deprivation, causing a delay in the proper maturation process of the children; (4) struck one of the children on or about the side of the head at a time when the child had medically necessary ear tubes inserted; and (5) allowed the children to be in a situation injurious to their life, well-being, or morals.

As reflected in the order of the county court, the "[mother and Dandy] entered an admission to the allegations made by the State . . . ." Thereafter, the court found that the admissions should be accepted and that the children should be adjudicated

as children described in § 43-247(3)(a). The four were thereupon placed with the Department of Social Services "for appropriate out-of-home placement." There was no appeal from the order adjudicating the children to be neglected and dependent, and that order has become final.

The records of the adjudication are not before this court, and we are limited in consideration of the appeal to the facts as found in the county court's order of adjudication. The putative father of S.S.W. and M.D.W., while made a party at a later stage of this action, was dismissed voluntarily; his parental rights, if any, were not determined or terminated; and he will take no further part in this action.

On November 28, 1990, the county court had before it the petitions for termination of the parental rights of the mother and Dandy toward the children. Although it is not clear from the record, the order terminating parental rights recited that

> [e]vidence was adduced by the offer of exhibits comprised of the depositions of the parties and witness herein and the introduction of records. The Court specifically finds that the following exhibits were received and considered by the Court: Exhibits 1 through 60, except for Exhibits 47, 48 and 57 which were not received over the objections of opposing parties. Thereafter arguments were made by counsel and upon completion thereof the matter was taken under advisement by the Court.

## ASSIGNMENTS OF ERROR

The mother, T.E., assigns as error the county court's determinations that sufficient evidence existed to clearly and convincingly prove neglect and that termination was in the best interests of her four children.

Dandy, the father and stepfather, assigns as error (1) that the evidence of neglect and abuse was insufficient, (2) that the county court erred in failing to find that DSS had failed to institute a workable plan of reunification and had set as its goal termination of the mother's and Dandy's parental rights, (3) that the county court disregarded expert testimony on behalf of Dandy, and (4) that the county court considered prior acts of

the mother in terminating Dandy's parental rights.

## DISCUSSION

In an appeal from a judgment terminating parental rights, an appellate court tries factual questions de novo on the record, which requires an appellate court to reach a conclusion independent of the findings of the trial court, but, when evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of C.K., L.K., and G.K., ante* p. 700, 484 N.W.2d 68 (1992); *In re Interest of M.P.,* 238 Neb. 857, 472 N.W.2d 432 (1991). See, *In re Interest of A.H.,* 237 Neb. 797, 467 N.W.2d 682 (1991); *In re Interest of J.S., A.C., and C.S.,* 227 Neb. 251, 417 N.W.2d 147 (1987); *In re Interest of T.C.,* 226 Neb. 116, 409 N.W.2d 607 (1987).

Regarding the court's authority to terminate parental rights, Neb. Rev. Stat. § 43-292 (Reissue 1988) provides in part that

> [t]he court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that . . .
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection.

Under § 43-292(2), the State must prove by clear and convincing evidence that a parent has substantially and continuously or repeatedly neglected the child. *In re Interest of L.J., J.J., and J.N.J.,* 220 Neb. 102, 368 N.W.2d 474 (1985).

In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code, termination of parental rights is permissible when the basis for such termination is provided by clear and convincing evidence. *In re Interest of C.C.,* 226 Neb. 263, 411 N.W.2d 51 (1987); *In re Interest of T.C., supra.*

The State is correct in its assertion that because the parental rights were terminated under § 43-292(2), and not § 43-292(6),

it is not required to have instituted a workable plan for reunification. As stated in *In re Interest of L.C., J.C., and E.C.*, 235 Neb. 703, 712, 457 N.W.2d 274, 280 (1990), "It is only to terminate parental rights pursuant to subsection (6) of § 43-292 that the State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so."

The fact remains, however, that the State *did* develop a plan—one that was unfair and only thinly disguised as one of reunification. The State dangled the proverbial "carrot" of reunification, openly admitting that the only means to the carrot was admission of sexual abuse. The sexual abuse was not admitted by the parents. Other than the children's hearsay testimony via DSS, no evidence of sexual abuse more solid than speculative explanations of the children's behavior was ever offered into evidence. The sexual abuse allegation was abandoned by the State early in the case. Finally, experts testified that an open admission of sexual abuse would not be dispositive as to the rehabilitation process.

Apparently, no additional evidence was received at the hearing on the petitions for termination, though it was suggested at oral argument that the receipt of the 57 exhibits was in fact a judicial notice of the records of the proceedings and of the various reports, depositions, statements, and physical examinations which occurred from the date of the adjudication to the date of the termination. It would have been an improper exercise of the court's authority to judicially notice nonadjudicative facts.

As we said in *In re Interest of C.K., L.K., and G.K., ante* p. 700, 709, 484 N.W.2d 68, 73 (1992), quoting *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989),

> "Judicial notice . . . is not the same as extrajudicial or personal knowledge of a judge. 'What a judge knows and what facts a judge may judicially notice are not identical data banks. . . . [A]ctual private knowledge by the judge is no sufficient ground for taking judicial notice of a fact as a basis for a finding or a final judgment.' "

Care should be taken by the court to identify the fact that it is

noticing and its justification for doing so. *Colonial Leasing etc. v. Logistics Control G.I.*, 762 F.2d 454 (5th Cir. 1985). We do recognize, however, that counsel for the parties failed to object to at least 57 exhibits that somehow found their way into evidence. In any circumstance, and as this case is tried de novo on the record, we shall proceed on the basis of the evidence received. We do not by any means suggest that consideration of the introduction of evidence of reports by social service or medical personnel without further identification of the persons preparing or submitting such reports would comport with the due process requirements of a parental rights termination hearing. We merely point out that counsel was present representing Dandy and the mother, and any objection to the consideration of these items of evidence was waived.

From a consideration of the reports and the depositions, it fairly leaps from the record that the children were traumatized to an extent that the mere presence of the mother and Dandy was sufficient to send them into panic and that, effectively, the parent-child relationships had been destroyed by the neglect and cruelty of the parents. There is some complaint in the record of the effect of a social services recommendation that a reunification plan not be effected until the mother and Dandy admitted improper sexual contact with the children. The sexual complaint was apparently withdrawn by the State and did not exist at the time of the order of the court adjudicating the children as neglected and dependent.

We find in our de novo review of the record that the children are neglected children within the purview of § 43-247(3)(a), that it is in the best interests of the children that the parental rights of the mother and Dandy be terminated at this time, and that the parental rights should probably have been terminated at the time of the original adjudication.

The judgment of the county court is affirmed.

AFFIRMED.