IN RE INTEREST OF T.C., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. Q.M., APPELLANT.

409 N.W.2d 607

Filed July 24, 1987.    No. 86-1002.

John G. Liakos of Liakos & Kuhn, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

A petition was filed on October 23, 1984, in the separate juvenile court of Douglas County, and contained allegations that T.C., born on August 15, 1984, was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982), because T.C. lacked proper parental care by reason of the fault or habits of his parents, namely:

A. [T.C.'s parents] have failed to cooperate with medical personnel in accepting the needed training required for providing the necessary care required by said child, who was born prematurely and is a high risk baby, to wit:

1. Said child was on the apnea monitor from August 15, 1984 to October 2, 1984; [T.C.'s parents] were told of the need for CPR and monitor training before said child could be released; [T.C.'s parents] failed to appear and satisfactorily complete the training.

B. Said child was in the hospital from August 15, 1984 to October 2, 1984, during which time [T.C.'s parents] visited said child five times in August and only once in September; [T.C.'s parents] had been advised of the importance of visiting and becoming familiar with said child.

In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. See, *In re Interest of K.L.N. and M.J.N.*, 225 Neb. 595, 407 N.W.2d 189 (1987); *In re Interest of J.W.*, 224 Neb. 897, 402 N.W.2d 671 (1987); *In re Interest of M.L.B.*, 221 Neb. 396, 377 N.W.2d 521 (1985). In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Cum. Supp. 1982 & Reissue 1984), termination of parental rights is permissible when the basis for such termination is proved by clear and convincing evidence. See, *In*

*re Interest of K.L.N. and M.J.N., supra; In re Interest of J.W., supra.* A juvenile's best interests are one of the primary considerations in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. See, *In re Interest of K.L.N. and M.J.N., supra; In re Interest of J.W., supra.*

On November 5, 1984, the court placed temporary custody of T.C. with the Nebraska Department of Social Services until further order of the court and then held an adjudication hearing on January 30, 1985. T.C.'s mother was represented by counsel, and a guardian ad litem had been appointed for T.C.

At the adjudication hearing, a neonatologist testified that T.C. was born 8 to 10 weeks prematurely on August 15, 1984, and suffered from apnea, which is cessation of breathing accompanied by a decrease of the heart's rate, and had a hypothyroid condition. The neonatologist testified about the necessity of keeping T.C. on an apnea monitor after the child's release from the hospital. The apnea monitor sounds an alarm if the child's breathing stops. Therefore, in addition to the monitor, it is necessary for the child's survival that there be someone to administer cardiopulmonary resuscitation or the child will die within minutes.

The child's parents are not married to each other. The mother was informed about the serious consequences of her child's condition if prompt resuscitative action were not taken in response to the monitor's alarm. The mother was also informed that her child would be placed in foster care if the mother did not have suitable CPR training. Arrangements were made for the mother's CPR lessons at the hospital, but the mother did not attend those CPR classes. The mother told one of the hospital's staff that she was too busy to attend the classes and was thinking about changing doctors, since she did not want T.C. to come home from the hospital with an apnea monitor. The child was placed in foster care, pending the mother's CPR training.

The adjudication hearing was continued until April 1, 1985. When the adjudication hearing resumed, the mother had not completed CPR training. As an explanation for her failure to obtain CPR training, the mother testified that T.C.'s father had beaten her with a hammer in February 1985, breaking her ribs

and causing hospitalization for approximately 1 month. In the later stages of the mother's pregnancy with T.C., the child's father pulled the mother from an automobile and struck blows to the pregnant mother's stomach. T.C. is macrocephalic, a condition described as an abnormal rate of growth for the child's head as the result of excessive cranial fluid, which requires a permanent tap to drain the excess fluid from T.C.'s brain. T.C. is mentally handicapped and needs special attention and education, such as that available at the Meyer Children's Rehabilitation Institute.

The court found that T.C. was a juvenile within the meaning of § 43-247(3)(a) and ordered a dispositional hearing for May 13, 1985, at which the evidence established that T.C.'s mother, 31 years of age, was unemployed and had convictions for shoplifting, disorderly conduct, and prostitution. At the dispositional hearing, without objection, the court ordered

[t]hat [T.C.'s mother] shall:

a. Participate in a CPR and apnea monitor training program;

b. Participate in the Early Referral Program through the Meyers Childrens [sic] Rehabilitation Institute;

c. Participate in a domestic violence program;

d. Maintain a stable legal income;

e. Obtain and maintain suitable stable housing;

f. Remain free from all state, municipal and federal criminal arrests;

g. Have reasonable rights of visitation as arranged by the Child Protective Service worker;

h. Cooperate with the workers on this case including notifying the Court within 48 hours of a change in residence or income.

At a review hearing on November 7, 1985, the court was informed about the necessity of CPR in relation to T.C.'s continuing condition, but T.C.'s mother had not completed CPR training. The court admonished T.C.'s mother concerning the necessity of the mother's completion of CPR classes. The court's previous order of May 13, 1985, remained in effect, without any complaint or suggestions by the mother, substantially unchanged except that T.C.'s mother was required

to participate in the Omaha Public Schools' Infant Stimulation Program instead of the program provided through the Meyer Children's Rehabilitation Institute.

Based on § 43-292(6) (Reissue 1984), a motion to terminate parental rights was filed on April 9, 1986, alleging that T.C.'s mother had failed to comply with the plan of rehabilitation ordered by the court on May 13, 1985, and its subsequent modifications, that is, T.C.'s mother had failed to complete a CPR training program; had not participated in the Infant Stimulation Program available through the Omaha public school system; had not participated in a domestic violence program; did not remain free from arrest; failed to maintain stable housing; and, from May 13 to November 6, 1985, had visited T.C. on only six occasions and had not visited T.C. since November 6, 1985.

At the hearing for termination of parental rights, on October 16, 1986, T.C.'s mother had completed neither the CPR training nor the Infant Stimulation Program required as the result of T.C.'s mental and physical condition. T.C.'s mother had told a social worker that the mother was too busy to attend the domestic violence program. When the social worker inquired about the mother's noncompliance with the specific rehabilitative program ordered by the court, the mother responded, "I'll get to it. I'll make an appointment. I'll go next week. I'll set it up." T.C.'s mother changed her residence, which was discovered by a probation officer only after additional investigation concerning the mother's whereabouts.

On account of his special needs, T.C. had been placed with the Nebraska Children's Home Society. During that time, T.C.'s mother was allowed weekly visits with T.C., including the time while T.C. was in a "Homebound Preschool Handicapped Program," when the mother could have observed a teacher working with T.C. in view of his special needs. Between June 3, 1985, and April 9, 1986, the child's mother visited him only twice and, before April 9, made no request to visit T.C. in 1986. The mother was never told that she could not visit the child. However, the mother visited T.C. on only six occasions in the 2-year span of foster care at Nebraska Children's Home Society. The mother was incarcerated in October 1985 for disorderly

conduct. After taking the case under advisement, the court, on October 30, 1986, made the following findings and order:

> That [T.C.] is within the meaning of . . . Section 43-292(6) . . . by clear and convincing evidence because reasonable efforts under the direction of the Court have failed to correct the conditions leading to the Court's previous finding that the child is within the meaning of Section 43-247(3a) . . . [and]
>
> . . . .
>
> . . . [t]hat the parental rights of [T.C.'s mother] . . . are hereby terminated . . . .

The court then placed T.C. in custody of the Nebraska Department of Social Services pending a further dispositional hearing. The mother has appealed and contends that the court should not have considered the mother's failure to remain free from arrest and her failure to participate in the programs regarding domestic violence and infant stimulation. Also, the mother contends that the court should not have considered the child's extended foster care as a factor affecting termination of parental rights and should not have considered certain testimony from a registered nurse, an expert witness, concerning programs for children with special needs as the result of their physical or mental condition. Finally, the mother contends that the evidence is not clear and convincing that she did not make reasonable efforts to correct the conditions leading to the adjudication that T.C. was a juvenile within the meaning of § 43-247(3)(a).

As part of its powers, the juvenile court, in its discretion, may prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. See *In re Interest of Brungardt*, 211 Neb. 519, 319 N.W.2d 109 (1982). Cf. § 43-292 (termination of parental rights; failure to correct conditions leading to adjudication).

As expressed in *In re Interest of W.*, 217 Neb. 325, 330, 348 N.W.2d 861, 865 (1984): "The mother has failed to rehabilitate herself, notwithstanding the [court's] order and programs directed to rehabilitation. When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child

require a final disposition be made without delay."

The program for the mother's rehabilitation was designed to supply proper parental care which was previously lacking and to attend to T.C.'s special needs. In view of the child's condition and special needs, T.C.'s best interests warranted some program such as that ordered by the juvenile court in this case. A court-ordered program, necessarily injected into the lives of T.C. and his mother, is a commentary in itself. The special needs of a child such as T.C., ordinarily, would have evoked a parent's spontaneous and voluntarily responsive attention, not parental procrastination approaching apathy. T.C.'s daily and immediate needs could not be deferred until his mother's inclination might prompt appropriate action. We find clear and convincing evidence that T.C.'s mother failed to comply with the rehabilitative program ordered by the juvenile court and that the mother has not corrected the conditions underlying the adjudication that T.C. was a juvenile within the Nebraska Juvenile Code. Therefore, termination of parental rights is permitted under § 43-292(6).

Finally, the mother contends that the court erred in admitting testimony of a registered nurse concerning programs for the special needs of T.C. As we stated in *State v. Copple*, 224 Neb. 672, 697, 401 N.W.2d 141, 158 (1987):

> Whether a witness is qualified as an expert is a preliminary question for a trial court. Neb. Evid. R. 104(1). Determination of a witness' qualification as an expert is a matter within the sound discretion of a trial court, whose ruling will be upheld unless such ruling constitutes an abuse of discretion. See *Schmidt v. J.C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985).

We find no abuse of discretion by the trial court in admitting the nurse's testimony as evidence. Also, as previously noted, this court reviews the record de novo in resolving questions concerning termination of parental rights.

AFFIRMED.