IN RE INTEREST OF L.O. AND B.O., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. C.O.D., APPELLANT.
429 N.W.2d 388

Filed September 23, 1988.   Nos. 87-1015, 87-1016.

Richard J. Hove for appellant.

Stephen R. Illingworth, of Tringe & Illingworth, Special Phelps County Attorney, for appellee.

Robert A. Ide, guardian ad litem.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

SHANAHAN, J.

The county court for Phelps County, as a juvenile court, terminated the parental rights of the mother, C.O.D., in her two daughters, L.O. and B.O., as the result of C.O.D.'s failure to correct conditions leading to the adjudication that L.O. and B.O. were juveniles within the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 et seq. (Cum. Supp. 1982, Reissue 1984 & Cum. Supp. 1986). The mother appealed to the district court, which affirmed.

"In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court

considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another."

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 256, 417 N.W.2d 147, 152 (1987) (quoting *In re Interest of T.C.*, 226 Neb. 116, 409 N.W.2d 607 (1987)). See, also, *In re Interest of L.H.*, 227 Neb. 857, 420 N.W.2d 318 (1988).

In March and April of 1982, the State filed two separate petitions, alleging that L.O. (born August 3, 1979) and B.O. (born April 5, 1982) lacked proper parental care by reason of the fault or habits of their mother and were, therefore, juveniles under the Nebraska Juvenile Code. See § 43-247(3)(a) (Cum. Supp. 1982). C.O.D. was unmarried at the birth of her daughters and the filing of the State's petitions. The court ordered temporary placement of the children with the Department of Social Services (DSS) pending further hearing on the petitions.

At the adjudication hearing on July 14, 1982, C.O.D., accompanied by her court-appointed attorney, admitted the allegations in the State's petitions. The court determined that it had subject matter jurisdiction under § 43-247(3)(a) and that C.O.D. had neglected her daughters, and ordered that the children remain in foster homes supervised by DSS.

Involved in the court's determination that C.O.D.'s daughters were neglected within the meaning of § 43-247(3)(a) are several factual factors. In 1979 and 1981, C.O.D. attempted suicide. In 1980 and 1981, C.O.D. hosted several nighttime parties at her trailer house, some lasting all night, during which L.O. was allowed to stay up until she became exhausted. At such parties, the mother frequently allowed L.O. to drink alcohol to the point of intoxication, and to smoke cigarettes and marijuana. When partygoers objected to L.O.'s ingestion of intoxicants, C.O.D. responded that L.O. was her child and she would raise her as she wanted. There was also evidence that C.O.D. physically abused L.O. by striking the child's surgical incisions. C.O.D.'s "off and on" roommate, who complained to the Phelps County Sheriff's Department about the mother's treatment of L.O., testified that the mother did not regularly feed and bathe L.O. C.O.D. was a part-time employee at a

cafe.

After the adjudication hearing and at a hearing on August 4, 1982, the court ordered a plan of rehabilitation for C.O.D. The plan called for C.O.D.'s two 1-hour visitations of each child at a day-care center. The foster parents brought the children to the visitation site. C.O.D. was required to move from Phelps County and establish a residence in Kearney (Buffalo County) for participation in vocational rehabilitation. In addition to vocational rehabilitation, C.O.D. was ordered to attend counseling for drug and alcohol abuse, attend parenting classes, and have a medical evaluation. The court also ordered that C.O.D. be evaluated for drug abuse, and directed C.O.D. to cooperate with personnel of DSS.

During subsequent court hearings, the plan ordered in August 1982 was modified or supplemented. B.O. was moved to a foster home in Kearney, but L.O. remained with her foster family in Holdrege; visitation was continued and funds for transportation were supplied; C.O.D. was to continue her present employment at a nursing home, and demonstrate her stability and ability to provide a suitable home for her children; and, if the mother complied with the provisions of the plan, the frequency of visitation in the mother's home would be increased, with transportation provided by DSS. C.O.D. and her children were also scheduled for counseling with a clinical psychologist.

C.O.D. failed to comply with most of the plan's provisions. She delayed her move to Kearney, and her cooperation with the social workers was merely occasional. Visitation was so sporadic that the foster parents refrained from telling the children when their mother was scheduled to see them lest the children become upset and disappointed when C.O.D. failed to appear for visitation. C.O.D. failed to keep appointments for drug and alcohol counseling, failed to undergo evaluation for substance abuse, and failed to attend parenting classes. C.O.D. was discharged from employment at a nursing home due to absences, tardiness, and sleeping on the job.

On April 7, 1984, C.O.D., then 22 years of age, married B.D., age 17. B.D., Jr., was born of C.O.D.'s marriage and remained in C.O.D.'s custody.

On June 10, 1985, the State filed two separate petitions for termination of C.O.D.'s parental rights in her daughters and alleged that reasonable efforts, under the direction of the court, had failed to correct the conditions leading to the adjudication. See § 43-292(6) (Reissue 1984).

At the termination hearings, evidence disclosed that since July of 1982, C.O.D. had changed residences approximately 15 times. C.O.D. and her husband had lived in Missouri since May of 1985, and had visited her children only twice in the year preceding the termination hearings.

Dr. O'Neill, a clinical psychologist, testified that when a child expects a parental visit which does not occur, "then that would be very disruptive and painful to the child, make the child angry, make her difficult — make it difficult for her to trust." Dr. O'Neill also testified that he counseled the mother, her husband, and the children in 1984 as an attempt to reunite the family. According to Dr. O'Neill, C.O.D. lacked the parenting skills and emotional stability required for proper care of her children, and was insecure and unable to provide a predictable, orderly world for herself or her children. Although C.O.D. did care for her young son, she was expecting her fourth child, and Dr. O'Neill felt "it would be absolutely overwhelming to her . . . with two additional children." Dr. O'Neill testified that a trial period of reunification would be "a very calculated risk to do so and I think that every indication that we have is that the children will suffer. . . . I don't see enough hope or possibility that it will succeed to justify the gamble." Dr. O'Neill concluded that C.O.D. is "too much of a child herself to be a parent" and that termination of C.O.D.'s parental rights would be in the best interests of her daughters.

C.O.D. admitted that she quit attending alcohol counseling and parenting classes, and stated that she did not follow through with the plan because she "didn't agree with all of it." Regarding her husband, C.O.D. acknowledged that he strikes her and is a source of anguish. According to C.O.D., her husband "has problems with accepting the girls because they're not his," and sees nothing wrong with having alcohol and drugs around the house in the presence of children. At the time of the termination hearing, C.O.D.'s husband was in jail. At the

termination hearing, when asked: "If it comes down to a decision between [B.D., her husband] and your girls, who's it going to be?" C.O.D. answered: "I couldn't make that choice."

The court determined that reasonable efforts to correct the conditions leading to the adjudication had failed on account of C.O.D.'s conduct, that the mother failed to follow the rehabilitation plans, and that the best interests of L.O. and B.O. required termination of C.O.D.'s parental rights in the children. The county court then terminated C.O.D.'s parental rights in L.O. and B.O. and placed the children in DSS' custody. On appeal, the district court affirmed the judgment terminating C.O.D.'s parental rights.

C.O.D. claims the judgment of parental rights termination is erroneous because (1) the trial court used evidence which related to events before the birth of B.O. to determine that B.O. was a juvenile under § 43-247(3)(a); (2) the plans of rehabilitation should have included a trial period to ascertain whether C.O.D. could adequately care for her daughters; and (3) the trial court incorrectly determined that reasonable rehabilitative efforts had failed to correct the conditions leading to the adjudication and that the best interests of the children necessitated termination of C.O.D.'s parental rights in L.O. and B.O.

In her first assignment of error, C.O.D. apparently challenges the July 14, 1982, adjudication concerning both daughters, contending that the conditions which led to the adjudication involved events which occurred before B.O. was born. C.O.D. argues that no evidence relates to the conditions which existed during the week when the mother had B.O.'s custody before temporary removal of the child pursuant to court order. However, at the adjudication hearing, the mother admitted the allegations in the petitions concerning both L.O. and B.O. The adjudications which followed became final and appealable orders in 1982. *In re Interest of Z.R.*, 226 Neb. 770, 415 N.W.2d 128 (1987); *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). C.O.D. failed to appeal from the adjudications. In the absence of C.O.D.'s timely appeal, we lack jurisdiction to review the 1982 adjudication orders. See *In re Interest of Z.R., supra*. Moreover, we are reminded that a

juvenile court "need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child." *In re Interest of S.P., N.P., and L.P.*, 221 Neb. 165, 166-67, 375 N.W.2d 616, 617 (1985). The mother's first assignment of error has no merit.

The mother claims the rehabilitation plans should have included a trial period of reunification by giving the mother an opportunity to show that she could care for the children. "A juvenile court has the discretionary power to prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code." *In re Interest of L.H.*, 227 Neb. 857, 863, 420 N.W.2d 318, 321 (1988).

The evidence shows C.O.D. was not complying with the rehabilitative plan and that the conditions which led to the adjudication and removal of the children were not removed and did not improve. The rehabilitative plan was reasonable, notwithstanding absence of a trial period of reunification. The initial rehabilitative plan was modified in efforts to reunite the family, and to accommodate the mother's ever-changing priorities, but appointments for visitation, counseling, and evaluation were ignored by the mother. Dr. O'Neill's testimony and opinion about experimentally reuniting C.O.D. with her children cast grave doubt on the potential success of such a situation. The mother's immaturity and instability persisted to jeopardize the children's well-being. Under such circumstances, the mother's right to maintain or regain custody of her children was far outweighed by the paramount interest which the public has in the protection of the rights of children. See, *In re Interest of W.*, 217 Neb. 325, 348 N.W.2d 861 (1984); *In re Interest of M.*, 215 Neb. 383, 338 N.W.2d 764 (1983). " 'A parent afforded a program of rehabilitation must realize that the courts will examine a pattern of parental conduct in determining an appropriate disposition for the best interests of a child. . . .' " (Emphasis omitted.) *In re Interest of S.P., L.P., and N.P., supra* at 167, 375 N.W.2d at 617-18 (quoting *In re Interest of D.*, 218 Neb. 23, 352 N.W.2d 566 (1984)). C.O.D.'s second assignment of error is without merit.

In her final assignment of error, C.O.D. argues that the

evidence is insufficient to support findings that reasonable efforts had failed to correct the conditions leading to the adjudication and that the best interests of the children necessitated termination of parental rights.

Section 43-292 provides:

> The court may terminate all parental rights between the parents [and a] juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

A parent's failure to make reasonable efforts to comply with a court-ordered plan of rehabilitation presents an independent reason justifying termination of parental rights. *In re Interest of L.H., supra; In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). See, also, § 43-292(6) (termination of parental rights; failure to correct conditions leading to adjudication). Regarding termination of parental rights under § 43-292(6):

> [I]f a circumstance designated in subsections (1) to (6) is evidentially established, there must be the additional showing that termination of parental rights is in the best interests of the child, the primary consideration in any question concerning termination of parental rights. The standard of proof for each of the two preceding requirements prescribed by § 43-292 is evidence which is "clear and convincing."

Therefore, regarding parental noncompliance with a court-ordered rehabilitative plan, under § 43-292(6) as a ground for termination of parental rights, the State must prove by clear and convincing evidence that (1) the parent has willfully failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's

noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child.

*In re Interest of J.S., A.C., and C.S., supra* at 267, 417 N.W.2d at 158. See, also, *In re Interest of L.H., supra.*

The evidence clearly and convincingly establishes that C.O.D. has willfully failed to comply with the rehabilitation plan ordered by the court. The provisions of the plan contained reasonable remedial requirements aimed at correcting or eliminating the conditions which resulted in the adjudication. The plan was modified to accommodate the mother's schedule and allowed for visitation at the mother's request. Financial assistance was provided by DSS to assist in C.O.D.'s compliance with the court-ordered plan. Obviously, C.O.D. failed to use the resources available for her rehabilitation. C.O.D. eventually and effectively refused alcohol counseling and parenting classes because she disagreed with the plan. The harm to C.O.D.'s children caused by her failure to rehabilitate is all too evident. Although C.O.D. suggests that she may be able to alter the situation, the children have been in foster care for approximately 6 years, awaiting such change and parental rehabilitation. Under the circumstances, prospects for the children must take into account the past conduct of a parent, not just a parental promise about the future.

> "When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child require that a final disposition be made without delay." *In re Interest of W.*, 217 Neb. 325, 330, 348 N.W.2d 861, 865 (1984). . . .
>
> . . . .
>
> . . . "[A] child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." *In re Interest of Z.R.*, 226 Neb. 770, 786, 415 N.W.2d 128, 138 (1987).

*In re Interest of L.H.*, 227 Neb. 857, 863, 865, 420 N.W.2d 318, 321-22 (1988).

We, therefore, find clear and convincing evidence that C.O.D. has willfully failed to comply with the rehabilitation plan ordered by the juvenile court to correct the conditions leading to the adjudication and that termination of parental rights is in the best interests of L.O. and B.O.

The judgments terminating C.O.D.'s parental rights in L.O. and B.O. are affirmed.

AFFIRMED.