IN RE INTEREST OF Q.R. AND D.R., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. D.R., APPELLANT.

438 N.W.2d 146

Filed April 7, 1989.   No. 88-781.

Gloria Jean Sorey for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Richard E. Rothrock for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

D.R., mother of Q.R., born May 17, 1977, and D.R., born August 19, 1984, appeals from an order of the separate juvenile court of Douglas County terminating her parental rights to the two minor children. The mother timely appealed, contending in this court that the juvenile court erred in (1) "[d]etermining that the State had clearly and convincingly proved Appellant's failure to comply with the Plan designed to correct the conditions leading to the adjudication under Section 43-247(3)(a) R.S. Supp.,1986," and (2) finding that in the best interests of the children, termination of parental rights "was the only reasonable alternative in view of noncompliance with the Plan." We affirm.

The record shows that appellant is the mother of the two children named above and of another child, M.R., born May 14, 1986. As to M.R., a motion to terminate appellant's parental rights was filed on April 20, 1987, and appellant's parental rights were terminated on July 14, 1987. That order of termination became final and is not the subject of this appeal. The circumstances, however, are important in considering the case involving the other two children.

The record shows that M.R., at birth, was suffering from drug withdrawal symptoms, had asphyxia, and required help before she could breathe alone. Three months after birth, the infant still required special care and a heart monitor. Appellant admitted to drug use at some time before the birth of M.R., but indicated that she had stopped using drugs before the birth of M.R. The fact of appellant's drug use was shown by M.R.'s symptoms of drug withdrawal at birth. Further evidence showed appellant had not seen the child during the 13 months preceding the hearing. As stated, the termination order as to M.R. was not appealed.

As to the other two children, the record shows that on June 24, 1986, the children were placed in the custody of the Nebraska Department of Social Services (DSS), without objection by appellant, and that at the adjudication hearing on July 28, 1986, appellant admitted the factors set out above as to M.R. and admitted that the living accommodations for the

children were inadequate and had been observed to be cluttered and roach infested. The court ordered that the children remain in the custody of DSS.

On September 9, 1986, at a dispositional hearing, the court ordered that the children remain in the custody of DSS and ordered appellant to conform to seven conditions: to maintain visitation with the children; to submit to chemical dependency evaluation and follow the recommendations resulting from the evaluation; to obtain and maintain employment; to obtain independent housing and keep the house clean; to refrain from criminal activity; to attend counseling with regard to relinquishment of her parental rights to M.R.; and to cooperate with the workers involved in her case and notify them of any change of address.

The case was reviewed on December 9, 1986, and April 9, July 13, and December 15, 1987. On each review, similar conditions were imposed on appellant after hearings which showed that the only condition observed by appellant was the condition relating to visitation with her children. Appellant did visit the two children, with some omissions, such as when she was in jail for various misdemeanor offenses.

On July 8, 1988, the county attorney filed a motion for termination of appellant's parental rights, alleging that appellant had not followed the recommendations of the plan, in that appellant did not participate in the Equilibria drug treatment program and had failed to attend an interview at the NOVA drug program, had not maintained employment and furnished proof of income, had not obtained independent housing, had not refrained from criminal activity, and had failed to cooperate with the workers involved with her case. On August 17, 1988, appellant's parental rights were terminated.

With regard to appellant's first assigned error, that there was not clear and convincing proof of appellant's noncompliance with the court-ordered rehabilitative plan, we have held:

> [R]egarding parental noncompliance with a court-ordered rehabilitative plan, under § 43-292(6) as a ground for termination of parental rights, the State must prove by clear and convincing evidence that (1) the parent has

willfully failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child.

*In re Interest of J.S., A.C., and C.S.,* 227 Neb. 251, 267, 417 N.W.2d 147, 158 (1987), quoted in *In re Interest of P.M.C., ante* p. 701, 437 N.W.2d 786 (1989).

In our review of a judgment terminating parental rights, we try the factual questions de novo on the record and are required to reach a conclusion independent of the juvenile court. In such review, where the evidence is in conflict, we consider and may give weight to the juvenile court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of P.M.C., supra; In re Interest of A.Z., B.Z., and R.Z.,* 230 Neb. 291, 430 N.W.2d 901 (1988).

After each of the review hearings set out above, the court entered a rehabilitative plan. The last plan, set out in the juvenile court's order of December 15, 1987, provided that appellant should:

1. Maintain regular visits with [the children];

2. Submit to random drug screenings within 24 hours of request by the workers involved;

3. Attend a preliminary interview at the NOVA Program within 30 days from December 15, 1987, and follow all recommendations, including participation of in-patient treatment or out-patient treatment of at least 3 times a week;

4. Obtain regular income through employment and provide proof (pay stubs) to the probation officer no later than the 15th day of each month starting January, 1988;

5. Obtain independent and adequate housing and provide rent receipts to the probation officer no later than the 15th day of each month;

6. Abstain from all illegal activities and make resolution of any current charges or warrants pending;

7. Contact the probation officer at least every other Friday starting December 18, 1987 at 444-7629;

8. Cooperate with the workers and professionals

involved and give 48 hours notice of change in employment, income or residence.

At the termination hearing, evidence adduced proved that appellant complied only with the first condition. Appellant did visit her children with some regularity.

Other evidence showed that the requirements of the plan were explained, in detail, to appellant and that appellant understood the plan and agreed to do the required things. The record establishes that appellant did not violate condition 2, in that, for some inexplicable reason, no random drug screening was requested. We share the concern of the juvenile court that the authorized tests were not used and that the checking by the caseworkers seemed to concentrate on employment, housing, and cooperation with the professionals and workers concerned in appellant's case, rather than on appellant's drug usage.

The evidence is clear and convincing, however, that even without the random tests, appellant has failed to comply with condition 3 of the December 15, 1987, order. That part of the order required appellant to "attend a preliminary interview at the NOVA Program within 30 days from December 15, 1987, and follow all recommendations, including participation of in-patient treatment or out-patient treatment of at least 3 times a week." All the evidence, including appellant's, shows that appellant did not comply with this requirement or with earlier orders of the court requiring drug addiction treatment. A juvenile court probation officer testified that appellant had partially complied with an earlier court order that she submit to a chemical dependency evaluation, in that appellant had obtained such an evaluation on October 8, 1987. Appellant, however, did not comply with the recommendation of that evaluation which indicated appellant had a drug problem. Appellant admitted that she, at least at one time, had been a heroin addict. The recommendation was that appellant should participate in the heroin addiction program at the Equilibria drug program. Appellant did not participate at any time in that program, although she had specifically been ordered to do so on July 13, 1987.

Appellant was also specifically ordered to interview at the NOVA program, by the December 15, 1987, order, within 30

days. She did not interview at NOVA. Appellant testified that she had called NOVA, but not until sometime in July 1988, just before the termination hearing. At that time, appellant admitted she was told she needed inpatient drug treatment. Appellant further admitted that she had not sought such treatment during the whole period of time this case was going on, but that she had not sought the treatment because "probably to just be honest is because I wasn't ready, and if I — just say for instance if I was put there, you know, not on my own free will, then it wouldn't have done me no good . . . ."

There was further conclusive evidence that appellant did not furnish any required information showing that she was employed. Caseworkers testified that appellant did not cooperate with them in any way with drug counseling or in obtaining independent housing. Other evidence showed that appellant had not abstained "from all illegal activities."

In short, appellant has violated a substantial number of the provisions of the rehabilitative order and has chosen not to comply with reasonable orders attempting to straighten out her life so that she could give her children the care and guidance they need. Appellant's first assignment of error is without merit.

As to appellant's second assignment of error, we hold that the State does not have to prove that termination "was the only reasonable alternative in view of noncompliance with the Plan." In a termination proceeding, the only burden on the State is to prove, by clear and convincing evidence, that termination of parental rights is in the best interests of the child and that one or more of the six conditions set out in Neb. Rev. Stat. § 43-292 (Reissue 1988) exists. There is no burden on the State to prove that termination is the only alternative available.

In the case at bar, the State has proved that the best interests of the children require that the parental rights of their mother be terminated in order that they may have the opportunity to pursue their lives in a drug-free environment. We have stated:

"[W]here parents are unable or unwilling to rehabilitate themselves within a reasonable time, the best interests of the children require that parental rights be terminated without delay." *In re Interest of M.R., J.R., and N.R.,*

[228 Neb.] at 53, 420 N.W.2d at 927-28. " ' "[A] child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." ' " *In re Interest of L.O. and B.O.*, 229 Neb. 889, 896, 429 N.W.2d 388, 393 (1988) (citing *In re Interest of Z.R.*, 226 Neb. 770, 415 N.W.2d 128 (1987)).

*In re Interest of P.M.C., ante* p. 701, 709, 437 N.W.2d 786, 792 (1989).

In addition, the State has fully proved that the conditions set out in § 43-292(6) are present in this case. That section provides that parental rights are subject to termination when the following condition exists: "Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

Neb. Rev. Stat. § 43-247 (Reissue 1988) provides: "The juvenile court . . . shall have jurisdiction of . . . (3) Any juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent . . . whose parent . . . neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile . . . ." On July 28, 1986, the juvenile court determined, without objection from appellant, that the two children in this case were children within the meaning of § 43-247(3)(a). On September 9, 1986, the court ordered a reasonable rehabilitative plan and later simplified that plan for appellant. In the time elapsing between the first plan and the termination hearing on August 17, 1988 (some 23 months), four review hearings were held. Each time appellant was encouraged and exhorted to comply with the plans so that she could regain her children. Each time appellant was told of the dire consequences that could follow if she failed to comply. All encouragement, exhortation, and warnings were ignored by appellant.

The evidence is clear and convincing that appellant has willfully failed to comply with reasonable plans which, if complied with, would have resulted in the restoration of her children to her. The evidence is also clear and convincing that

the best interests of Q.R. and D.R. require that the parental rights of their mother, D.R., be terminated.

The judgment of the juvenile court is affirmed.

AFFIRMED.