IN RE INTEREST OF CONSTANCE G., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. BETH S., APPELLEE, AND LARRY G., APPELLANT.

529 N.W.2d 534

Filed March 24, 1995.   No. S-93-1034.

Michael J. Shaughnessy, of Shaughnessy & Shaughnessy, for appellant.

Daniel J. Thayer, of Lauritsen, Brownell, Brostrom, Stehlik & Thayer, for appellee Beth S.

Patrick L. Neid, guardian ad litem.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Following the appellee mother's admission of the allegations in the appellee State's petition and the appellant father's no contest plea, the county court, sitting as a juvenile court, adjudicated Constance G., the subject girl infant, to be "homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian" and asserted jurisdiction over her under the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993).

At a later dispositional hearing, the county court adopted the rehabilitation plan proposed by the Nebraska Department of Social Services and placed temporary custody of the infant in and with the department, which continued placement of the infant in the foster care arrangement the department had made pursuant to an earlier order of the county court. Although the mother did not appeal the dispositional order, the father first unsuccessfully appealed to the district court and thence to the Nebraska Court of Appeals, where he assigned and argued as errors in his brief the failure of the district court to have determined that the county court wrongly failed to place custody of the infant with the father and mother, or in the father's care alone, or in foster care closer to the parents' home. Ruling that the county court had not acquired jurisdiction over

the infant because there was insufficient evidence with regard to the father, the Court of Appeals dismissed the appeal. *In re Interest of Constance G.*, 3 Neb. App. 1, 520 N.W.2d 784 (1994).

Claiming that the Court of Appeals was wrong in its jurisdictional ruling, the guardian ad litem for the infant petitioned this court for further review. We granted such review and now reverse the judgment of the Court of Appeals and remand the cause with the direction that it affirm the judgment of the district court.

## II. FACTS

The supplemental bill of exceptions filed in this court after the Court of Appeals issued its opinion reveals that at the time of the adjudication hearing the county court, without objection, received in evidence an affidavit in which a department social worker recited that the infant's biological mother, Beth S., resided at Dannebrog with her parents, and the infant's biological father, Larry G., resided at Lincoln; that the mother had removed herself from Lincoln as the result of an altercation between herself and the father, who was then on probation for "DWI and Drugs"; and that the mother had been diagnosed while a teenager as being a paranoid schizophrenic and was currently hearing voices telling her to "physically and sexually abuse" the infant and had been hearing such voices since the infant's birth.

The affidavit further relates that the mother had an extremely hard time touching the then approximately 10-week-old infant for fear of hurting her and that the mother described her child as "a failure to thrive infant [who] lost weight rapidly after coming home from the Hospital." According to the affidavit, the social worker was of the opinion that leaving the infant with the maternal grandparents, where the mother intended to live, would create a substantial risk of harm to the infant, as both grandparents worked and would not be able to supervise the mother and the infant. The social worker's affidavit represents as well that the infant's mother wished to give up the infant but did not want the infant's father to have her. However, unsworn statements made at the adjudication hearing suggest that by the

time of that hearing, which is shown by the transcript to have been held on one date and by the supplemental bill of exceptions on another, both the mother and the father were living at Lincoln. In any event, the county court left the child in the foster care placement in the Grand Island or St. Paul area that the department had made; the exact location is not made clear by the record.

At the dispositional hearing, evidence was finally developed that the mother and father were not married, but that the father had admitted paternity on the occasion of the infant's birth. On this occasion the county court, without objection, received in evidence the department's plan for attempting to reunite the infant with her parents. The plan, among other things, calls for efforts to teach parenting skills to the parents and provides for supervised visitation among them. The record reveals, however, that the infant is not comfortable when in the presence of her parents, in that she cries very hard, vomits, and becomes rigid and that her eyes glaze over. The plan provides for continuing the foster care placement the department made at the inception of its involvement.

The father proposed his own plan, the essence of which is that the infant be placed in the parents' home at Lincoln, but that the mother never be left alone with the infant.

### III. ANALYSIS OF JURISDICTIONAL ISSUE

We begin our analysis of the jurisdictional issue by recalling that where a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from that of the inferior court, *Wagner v. Unicord Corp., ante* p. 217, 526 N.W.2d 74 (1995); however, where such a question rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly wrong, *State ex rel. Grape v. Zach, ante* p. 29, 524 N.W.2d 788 (1994).

With that in mind, we direct our attention to the relevant statute, § 43-247, which provides: "The juvenile court in each county as herein provided shall have jurisdiction of . . . (3) Any juvenile (a) who is homeless or destitute, or without proper

support through no fault of his or her parent, guardian, or custodian . . . ." The statutes do not define "homeless," "destitute," or "without proper support" as used in § 43–247(3)(a), nor have we heretofore specifically articulated what type of evidence is necessary to establish that one is a juvenile coming within the ambit of § 43–247(3)(a) because the juvenile is, through no fault of the parent, guardian, or custodian, homeless, destitute, or without proper support.

However, other courts have dealt with similar questions. The Pennsylvania Superior Court has interpreted language defining a "dependent child" as one who is " 'without proper parental care or control . . .' " to encompass two discrete questions: Is the child at this moment without proper parental care or control, and if so, is such care and control immediately available? *In re Interest of Justin S.*, 375 Pa. Super. 88, 96, 543 A.2d 1192, 1196 (1988).

The Arizona Supreme Court has held that the dependency provisions of its state's statutes do not proscribe any parental conduct or omission, but, rather, are concerned only with the welfare of children and whether their essential needs are being met. In a dependency action, the only inquiry is whether a child is in need of care which for any reason is not being provided. *Matter of Depend. Nos. JD–89–006 & JD–89–007*, 167 Ariz. 98, 804 P.2d 827 (Ariz. App. 1990); *Matter of Daniel, Deborah and Leslie H.*, 591 P.2d 1175 (Okla. 1979). See *In re Appeal in Maricopa Cty., Juv. Action No. J–75482*, 111 Ariz. 588, 536 P.2d 197 (1975).

The only issue before the court in *In re Bishop*, 36 Ohio App. 3d 123, 521 N.E.2d 838 (1987), was whether the trial court erred as a matter of law in adjudicating the minor child to be a dependent. The court noted that the focus of a charge that a child is dependent is on the child and his conditions and not on the fault of the parents. The court stated that a finding of dependency must be rooted in the question of whether the child is receiving proper care. See, also, *In re Campbell*, 13 Ohio App. 3d 34, 468 N.E.2d 93 (1983); *In re Bibb*, 70 Ohio App. 2d 117, 435 N.E.2d 96 (1980). Cf. *In re East*, 32 Ohio Misc. 65, 67, 288 N.E.2d 343, 345 (1972) ("[c]ertainly, the faults and failures of parents may be contributing factors creating a

condition or environment such as to warrant the state to intercede in the child's behalf").

In determining that the county court failed to acquire jurisdiction, the Court of Appeals relied upon *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). Therein, the State alleged that the juvenile court had jurisdiction over the minor because she lacked proper parental care by reason of the fault or habits of her mother in that the mother had sexually abused the minor. Later, the State amended its petition by removing the sexual abuse claim and asserting instead that the mother had been involved with the juvenile court for 2 years in an effort to resolve her poor parenting skills with reference to the minor's three siblings, with the result that the mother's rights in and to the siblings had been terminated. Notwithstanding the lack of any allegation that the mother's poor parenting of the · siblings had any effect upon the minor then at issue or that the mother's poor parenting of the siblings placed the minor then in question at risk, the juvenile court, unbothered by the fact that the minor had not even been born when it took jurisdiction over the siblings, concluded it needed no factual basis to assume jurisdiction over the minor because it was well aware of its previous dealings with the mother concerning the other siblings. Under those circumstances, we ruled that the juvenile court had acquired no jurisdiction over the minor.

But the situation in *In re Interest of D.M.B.* is hardly the situation here. Not only did jurisdiction in *In re Interest of D.M.B.* depend upon establishing lack of parental care by reason of the fault or habits of the mother, there were no allegations, let alone proof, that the mother's fault or habits in any way injured or put the minor at risk of harm.

In contrast, we are not here concerned with anyone's faults or habits; we are concerned only with the conditions in which the infant found herself. While the Court of Appeals correctly noted that the affidavit providing the only evidence at the adjudication hearing recited little about the father, it does reveal that the infant failed to gain weight while she was in the joint physical care of both her mother and father. That is not an insignificant fact.

The dual purpose of proceedings brought under § 43-247(3)(a) on the ground that a juvenile is homeless, destitute, or without proper support through no fault of the parents, guardian, or custodian is to protect the welfare of the minor and to safeguard the parents' right to properly raise their own child; a petition thereunder is brought on behalf of the child, not to punish the parents. See, *Matter of La Shonda B.*, 95 Cal. App. 3d 593, 157 Cal. Rptr. 280 (1979); *Collins v. Superior Court in and for County of Los Angeles*, 74 Cal. App. 3d 47, 141 Cal. Rptr. 273 (1977).

The father, after having been afforded his due process rights, including the appointment of counsel, chose not to contest the State's allegations, and the record made at the adjudication hearing supports the county court's finding that, at the very least, the infant, through no fault of the parents, was destitute and without proper support.

Accordingly, the Court of Appeals erred in ruling that the county court had not acquired the requisite jurisdiction. The county court had acquired jurisdiction over the infant and thereby had jurisdiction to make orders in the infant's best interests, consistent with the father's rights.

## IV. ANALYSIS OF FATHER'S ASSIGNMENTS OF ERROR

Given the foregoing determination, we exercise our option of considering the father's assignment of error which the Court of Appeals did not reach. See *Coppi v. West Am. Ins. Co.*, ante p. 1, 524 N.W.2d 804 (1994). As first noted in part I, the father complains that custody of the infant was not placed in his and the mother's care, or his care alone, or in foster care nearer to them. Before proceeding to an analysis of these issues, it is important to remind ourselves that in reviewing any final order of a juvenile court, an appellate court is to try the factual questions de novo on the record, reaching a conclusion independent of the findings of the juvenile court; provided, however, that when the evidence is in conflict, the appellate court considers and may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of D.M.B.*, 240 Neb.

349, 481 N.W.2d 905 (1992). See, also, *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990) (adjudication under § 43–247(3)(a)).

Resolution of the father's complaints is controlled by Neb. Rev. Stat. § 43–285 (Cum. Supp. 1990), which provides:

(1) When the court awards a juvenile to the care of the Department of Social Services . . . the juvenile shall, unless otherwise ordered, become a ward and be subject to the guardianship of the department . . . . [T]he Department of Social Services shall have authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it. . . .

(2) Following an adjudication hearing at which a juvenile is adjudged to be under subdivision (3) of section 43–247, the court may order the department to prepare and file with the court a proposed plan for the care, placement, and services which are to be provided to such juvenile and his or her family. If any other party, including, but not limited to, the guardian ad litem, parents, county attorney, or custodian, proves by a preponderance of the evidence that the department's plan is not in the juvenile's best interests, the court shall disapprove the department's plan. The court may modify the plan, order that an alternative plan be developed, or implement another plan that is in the juvenile's best interests.

We have held that a juvenile court has the discretionary power to prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. *In re Interest of L.O. and B.O.*, 229 Neb. 889, 429 N.W.2d 388 (1988); *In re Interest of L.H.*, 227 Neb. 857, 420 N.W.2d 318 (1988). While § 43–285 grants the juvenile court discretionary power over a plan proposed by the department, it also grants a preference in favor of such a plan. In order for the court to disapprove the department's plan, a party must prove by a

preponderance of the evidence that the department's plan is not in the child's best interests.

However, *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 272-73, 417 N.W.2d 147, 161 (1987), announced a procedural rule requiring a juvenile court to hold a hearing before entering an order containing a rehabilitative plan for a parent:

> [A]fter an adjudication under § 43-247(3)(a) of the Nebraska Juvenile Code and before entering an order containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. Because the evidential hearing for a rehabilitative plan is a dispositional hearing, the Nebraska Evidence Rules, §§ 27-101 to 27-1103, shall not apply at such hearing. The record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan. The juvenile court's specific findings of facts supporting the provisions contained in the parental rehabilitative plan shall be stated in the record.

In the present case, the county court complied with those requirements. At the adjudication hearing, the county court explained that if it were to find that the infant was a juvenile falling within the provisions of § 43-247(3)(a), the proceedings would progress to the dispositional stage, during which the court has a "wide variety of options." The county court also explained to the parents that the department would be preparing a plan and a report to help the court determine the infant's placement, and instructed the parents that the court would need information about their living arrangements and their respective homes to determine the best placement for the infant.

Although the infant was only 5 months old at the time of the dispositional hearing, she had been living in the third placement during her short life (the parents' home, the maternal

grandparents' home, and the foster home). The infant had shown continued improvement while in foster care and continued to become hysterical when in the presence of her natural parents. Thus, the record supports the continuation of the infant's placement in the stable environment provided by her foster parents.

Moreover, the department's plan focuses on attempting to correct the situations and conditions on which the adjudication was based. It provided for continued therapy for the mother's mental health problems and recommended treatment for the father's problems with anger. These were the conditions which in part led to the separation of the natural parents and the unstable environment in which the infant had been forced to live and had failed to thrive.

We conclude, independent of the findings of the county court, that continued placement of the infant in the present foster home is in the infant's best interests and that adoption of the department's plan was reasonable under the circumstances.

## V. JUDGMENT

As stated in part I, we reverse the judgment of the Court of Appeals and remand the cause with the direction that it affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.